FAY ARFA, A LAW CORPORATION
Fay Arfa, Attorney at Law
State Bar # 100143
10100 Santa Monica Blvd., #300
Los Angeles, CA 90067
Tel.: (310) 841-6805
Fax: (310) 841-0817
info@bestdefender.com

Attorney for Petitioner
PETER IVAN MCNEAL

## IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

PETER IVAN MCNEAL,

        Petitioner,

v.

DEAN BORDERS, Warden

        Respondent.

) No. CV 18-06964-JGB (JPR)
)
)
) TRAVERSE TO ANSWER TO
) PETITION FOR WRIT OF
) HABEAS CORPUS
)
)
)
)
)

1
2

TOPICAL INDEX

Page

3
4
ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4

5   I.   THE PROSECUTION FAILED TO PROVE THE CHARGE
6        BEYOND A REASONABLE DOUBT BECAUSE THE THREE-
         YEAR-OLD ACCUSER WHO TESTIFIED AT AGE SIX HAD NO
7        CREDIBILITY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4

8
9   II.  TRIAL COUNSEL RENDERED INEFFECTIVE ASSISTANCE BY
         FAILING TO INVESTIGATE AND PRESENT EXCULPATORY
10       EVIDENCE SHOWING HOW THE PAUWENS WOULD HAVE
11       LEARNED ABOUT THE M.K. CASE . . . . . . . . . . . . . . . . . . . . . .  7

12
13  III. TRIAL COUNSEL RENDERED INEFFECTIVE ASSISTANCE BY
         FAILING TO INVESTIGATE AND TO PRESENT A MEMORY
14       EXPERT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  13

15
16  IV.  TRIAL COUNSEL RENDERED INEFFECTIVE ASSISTANCE BY
         FAILING TO INVESTIGATE AND TO PRESENT AN EXPERT
17       TO EXPLAIN HOW I.P.'S PARENTS TAINTED HER
         RECOLLECTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  17
18

19  V.   TRIAL COUNSEL RENDERED INEFFECTIVE ASSISTANCE BY
20       FAILING TO INVESTIGATE AND TO PRESENT A TAINT
         EXPERT FOR ACCUSER M.K. . . . . . . . . . . . . . . . . . . . . . . . . .  24
21

22  VI.  TRIAL COUNSEL RENDERED INEFFECTIVE ASSISTANCE BY
23       FAILING TO PRESENT EVIDENCE 1) ABOUT THE CHARTER
         SCHOOL; 2)ABOUT THE THANKSGIVING DINNER PIES; AND
24       3) BY ARGUING MCNEAL'S GUILT . . . . . . . . . . . . . . . . . . . . .  27

25
26       A.   Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  27

27
28       B.   Photographs of the Bushes . . . . . . . . . . . . . . . . . . . . . . .  28

i

C.   The Dessert at the November 2009 Thanksgiving
     Party . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

D.   Defense Counsel Argued McNeal's Guilt . . . . . . . . . . . . . . 31

VII.  THE PROSECUTOR COMMITTED PREJUDICIAL
      MISCONDUCT DURING CROSS-EXAMINATION AND
      CLOSING . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

VIII. THE COMBINATION OF ERRORS RENDERED MCNEAL'S
      TRIAL FUNDAMENTALLY UNFAIR . . . . . . . . . . . . . . . . . . . . . 35

IX.   MCNEAL'S STATUTORILY MANDATED SENTENCE OF 15
      YEARS-TO-LIFE VIOLATES THE EIGHTH AMENDMENT'S
      PROHIBITIONS AGAINST CRUEL AND UNUSUAL
      PUNISHMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

ii

1

# TABLE OF AUTHORITIES

2
3

## FEDERAL CASES

4
*Baldwin v. Reese,* 541 U.S. 27 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . .  19

5
6
*Berger v. United States,* 295 U.S. 78 (1935) . . . . . . . . . . . . . . . . . . . .  34

7
*Brecht v. Abrahamson,* 507 U.S. 619 (1993) . . . . . . . . . . . . . . . . . .  7, 35

8
9
*Davis v. Silva,* 511 F.3d 1005 (9th Cir. 2008) . . . . . . . . . . . . . . . . . . .  28

10
*Ferensic v. Birkett,* 501 F.3d 469 (6th Cir. 2007) . . . . . . . . . . . . . . . .  14

11
12
*Gentry v. Sinclair,* 705 F.3d 884 (9th Cir. 2013)  . . . . . . . . . . . . . . . .  20

13
*Gray v. Netherland,* 518 U.S. 152 (1996)  . . . . . . . . . . . . . . . . . . . . . .  19

14
15
*Hinton v. Alabama,* __ U.S. __  (2014)  . . . . . . . . . . . . . . . . . . . . .  15, 21

16
*In re Winship,* 397 U.S. 358 (1970) . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6

17
18
*Karis v. Calderon,* 283 F.3d 1117 (9th Cir. 2002) . . . . . . . . . . . . . . . .  35

19
*Kimmelman v. Morrison,* 477 U.S. 365 (1986)  . . . . . . . . . . . . . . .  15, 21

20
21
*Lockyer v. Andrade,* 538 U.S. 63 (2003)  . . . . . . . . . . . . . . . . . . . . . . . .  2

22
*O'Sullivan v. Boerckel,* 526 U.S. 838 (1999) . . . . . . . . . . . . . . . . . . . .  19

23
24
*Rice v. Cooper,* 148 F.3d 747 (7th Cir. 1998)  . . . . . . . . . . . . . . . . . . .  20

25
*Strickland v. Washington,* 466 U.S. 668 (1984) . . . . . . . . . . . . . .  passim

26
27
*Teague v. Lane,* 489 U.S. 288 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

28
*United States v. Smithers,* 212 F.3d 306 (6th Cir. 2000) . . . . . . . . . . .  15

iii

*Wiggins v. Smith,* 539 U.S. 510 (2003) . . . . . . . . . . . . . . . . . . . . . . 15, 21

*Womack v. Del Papa,* 497 F.3d 998 (9th Cir. 2007) . . . . . . . . . . . . . . . 20

### STATE CASES

*Brown v. Colm,* 11 Cal.3d 639 (1974) . . . . . . . . . . . . . . . . . . . . . . . . 14

*Burch v. Valley Motor Lines, Inc.,* 78 Cal.App.2d 834 (1947) . . . . . . . 14

*In re Fields,* 51 Cal.3d 1063 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*In re Nourn,* 145 Cal. App. 4th 820,834 (2006) . . . . . . . . . . . . . . . . . . 21

*People ex rel. Dept. Pub.Wks. v. Douglas,* 15 Cal.App.3d 814 (1971) . 14

*People v. Ault,* 33 Cal.4th 1250 (2004) . . . . . . . . . . . . . . . . . . . . . passim

*People v. Brown,* 8 Cal.4th 746 (1994) . . . . . . . . . . . . . . . . . . . . . . 6, 7

*People v. Hill,* 17 Cal.4th 800 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . 33

*People v. Ledesma,* 43 Cal.3d 171,215 (1987) . . . . . . . . . . . . . . . . . . 25

*People v. McDonald,* 37 Cal.3d 351 (1984) . . . . . . . . . . . . . . . . . . . . 14

*People v. Shazier,* 212 Cal. App. 4th 520 (2012) . . . . . . . . . . . . . . . . . 33

*People v. Stoll,* 49 Cal. 3d 1136 (1989) . . . . . . . . . . . . . . . . . . . . . . . 14

*People v. Vance,* 188 Cal.App.4th 1182 (2010) . . . . . . . . . . . . . . . . . . 33

*Reynolds v. Natural Gas Equip.,* 184 Cal.App.2d 724 (1960) . . . . . . . 14

*Varas v. Barco Manufacturing Co.,* 205 Cal.App.2d 246 (1962) . . . . . 14

# FEDERAL CONSTITUTION

U.S. Const. amend. V  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

U.S. Const. amend. VI  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

U.S. Const. amend. XIV  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

U.S. Const. amend. VIII . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 36

# FEDERAL STATUTES

28 U.S.C. § 2254 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

# STATE STATUTES

Cal. Evid. Code § 801 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Cal. Penal Code § 288.7 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

1  FAY ARFA, A LAW CORPORATION
2  Fay Arfa, Attorney at Law
3  State Bar # 100143
   10100 Santa Monica Blvd., #300
4  Los Angeles, CA 90067
5  Tel.: (310) 841-6805
   Fax: (310) 841-0817
6  info@bestdefender.com
7
8  Attorney for Petitioner
9  PETER IVAN MCNEAL

10          IN THE UNITED STATES DISTRICT COURT
11
12          FOR THE CENTRAL DISTRICT OF CALIFORNIA

13  PETER IVAN MCNEAL,              ) No. CV 18-06964-JGB (JPR)
                                    )
14              Petitioner,         ) TRAVERSE  TO  ANSWER  TO
15                                  ) PETITION   FOR   WRIT   OF
16  v.                              ) HABEAS CORPUS
                                    )
17                                  )
18  DEAN BORDERS, Warden            )
                                    )
19              Respondent.         )
20  _____)
21
22
23
24          Petitioner, PETER MCNEAL, denies each allegation of
25  respondent's answer and alleges:
26
27  1.    McNeal is incarcerated by the State of California under a judgment
28        of a California state court;

                              1

2.    McNeal's incarceration is unlawful;

3.    The California Courts' denials of McNeal's claims were contrary to and an unreasonable application of clearly established United States Supreme Court precedent and/or based upon an unreasonable determination of the facts presented in the state court proceeding.  See 28 U.S.C. § 2254(d); *Lockyer v. Andrade,* 538 U.S. 63, 71-72, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003);

4.    An evidentiary hearing is necessary to resolve McNeal's claims;

5.    McNeal's claims are timely;

6.    McNeal's claims are exhausted;

7.    The Petition is not successive;

8.    No claim in the Petition is procedurally barred;

9.    No claim in the Petition is barred by the *Teague v. Lane,* 489 U.S. 288, 310 (1989) non-retroactivity doctrine;

10.   McNeal is entitled to discharge from his present incarceration;

11.   McNeal incorporates by reference and resubmits his petition for Writ of Habeas Corpus; and

12.   McNeal incorporates the Memorandum of Points and Authorities, any exhibits to his petition of Writ of Habeas Corpus, the Traverse

2

1     and Respondent's lodged documents.

2

3   DATED: January 23, 2019

4                                    Respectfully submitted,
5                                    FAY ARFA, A LAW CORPORATION

6                                    /s Fay Arfa

7                                    _____
8                                    Fay Arfa, Attorney for Petitioner

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                     3

# ARGUMENT

## I. THE PROSECUTION FAILED TO PROVE THE CHARGE BEYOND A REASONABLE DOUBT BECAUSE THE THREE-YEAR-OLD ACCUSER WHO TESTIFIED AT AGE SIX HAD NO CREDIBILITY

The jury convicted McNeal based on the uncorroborated and inconsistent story of a three-year-old child who supposedly disclosed the incident to her parents the day the incident allegedly happened. However, the parents did not disclose three-year-old I.P.'s disclosure for two years. Six-year-old I.P. testified at trial three years after the alleged events took place. No one at the party, not even I.P.'s parents, saw when or how the alleged incident occurred.  The prosecution failed to present any forensic or other corroboration. The first trial ended in a mistrial.

Respondent argues the CCA reasonably found I.P.'s testimony neither physically impossible nor inherently improbable.  Respondent argues I.P. credibly reported the incident and specifically described the incident.  (Ans. 14) Respondent argues the jury resolved any alleged inconsistencies and "a rational trier of fact could have found I.P. credible." (Ans. 14) Respondent also argues the trial court found the

evidence proved McNeal guilty. (Ans. 15)

McNeal disagrees.  I.P.'s mother, Michaele, testified about I.P.'s initial disclosure about two years after the supposed incident and the supposed disclosure. I.P. never, in her purported initial statement, even reported a completed sexual assault. I.P. stated, "Why did that man *want to put* his penis in my mouth." (3RT 2711) (Italics added.)

Respondent argues "[t]hat [because the] adults failed to promptly report her allegations to the authorities does not diminish her credibility."  (Ans. 14) McNeal disagrees.  Michaele's testimony constituted the only testimony about the "initial disclosure." Unless Michaele immediately reported the alleged incident, no credible evidence supported the notion that then three-year-old I.P. disclosed the incident immediately after the Thanksgiving party.

Respondent also overlooks the improbability that I.P. ever interacted with the "man" who gave her a cupcake. (4RT 3009-3013, 3032) Respondent never explained how "the man" "smooshed his face on the window and made a scary face at [I.P.] or a weird face. I don't know really."  (4RT 3013, 3021) I.P. could not identify "the man" at trial, at the preliminary hearing or at another hearing.  (5RT 3722) I.P.'s

5

factually incredible and uncorroborated testimony failed to support the conviction beyond a reasonable doubt. *In re Winship,* 397 U.S. 358, 362 (1970); U.S. Const. amends. V, VI, XIV.

To find sufficient evidence, the CCA unreasonably relies on I.P.'s "fresh complaint" disclosure to prove McNeal committed the incident. (Slip Opn. 6, 10) I.P.'s "fresh complaint" to her parents could only prove that I.P. made a disclosure and the circumstances under which it was made so that the jury could determine if the offense occurred. *People v. Brown*, 8 Cal.4th 746, 749-750 (1994).

Under the "fresh complaint" doctrine, "an extrajudicial complaint, made by the victim of a sexual offense, disclosing the alleged assault may be admissible for a *limited, nonhearsay purpose—namely, to establish the fact of, and the circumstances surrounding, the victim's disclosure of the assault to others—whenever the fact that the disclosure was made and the circumstances under which it was made are relevant to the trier of fact's determination as to whether the offense occurred*." *People v. Brown,* 8 Cal.4th at 749-750. (Italics added)

"Caution  . . . is particularly important because, if the details of the victim's extrajudicial complaint are admitted into evidence, even

6

with a proper limiting instruction, a jury may well find it difficult not to view these details as tending to prove the truth of the underlying charge of sexual assault [citation], thereby converting the victim's statement into a hearsay assertion. [Citation]." *People v. Brown*, 8 Cal.4th at 760-63.

By relying on the fresh complaint doctrine to prove the offenses, the CCA made an unreasonable determination of the facts and the law and violated McNeal's rights to due process, a fair trial, and the right to confront and cross-examine witnesses. *Brecht v. Abrahamson,* 507 U.S. 619 (1993); U.S. Const. amends. V, VI, VIII, XIV.

## II. TRIAL COUNSEL RENDERED INEFFECTIVE ASSISTANCE BY FAILING TO INVESTIGATE AND PRESENT EXCULPATORY EVIDENCE SHOWING HOW THE PAUWENS WOULD HAVE LEARNED ABOUT THE M.K. CASE

The CCA never made a reasoned decision.  Instead, the CCA improperly relied on the trial court comments at McNeal's motion for new trial. Respondent improperly relies on comments the trial court made at the motion for new trial hearing. (See, Ans. 16-17, 19) Respondent cites no authority for the notion that the CCA could consider the trial court's decision on a motion for new trial; California

7

law entitled McNeal to an independent review of his case. *People v.*

*Ault,* 33 Cal.4th 1250, 1261 (2004) (When the defendant reasserts on

appeal the claims previously raised in an unsuccessful new trial motion,

the appellate court must independently review the record to determine

if prejudicial trial error occurred.)

". . . As in any appeal from a final judgment, the reviewing court

must determine for itself whether errors denied a fair trial to the party

against whom the judgment was entered. As one decision has

suggested, it would be a 'non sequitur' to apply more deferential review

to a claimed error affecting the fairness of the judgment simply because

the complaining party moved unsuccessfully for a new trial on the same

ground in the court below. [Citation]." *People v. Ault*, 33 Cal. 4th at

1261-62.

Respondent next argues McNeal makes a conclusory claim and

failed to provide affidavits from trial counsel.  (Ans. 20) Respondent

argues McNeal should have submitted declarations by trial counsel as

part of his habeas petition.  (Ans. 20) Respondent incorrectly argues

that McNeal failed to provide declarations from trial counsel to support

his claim.  (Ans. 21) McNeal did include trial counsel's declarations in

8

McNeal's direct appeal. (Dkt. 20-5 at 200-204)

Both trial attorneys, Robin Yanes and Meline Mkrtichian, signed declarations in which they declared that they "investigated whether anyone at the King's Thanksgiving party on November 26, 2009 knew about the December 12, 2009 incident, but [they] could not find any information."[1] (Dkt. 20-5 at 200-201, 203) Yanes and Mkrtichian also declared they found no "connection between the Mila incident and the Thanksgiving party. [They] had no reason to believe the two were connected because neither Mila nor lo [I.P.] knew each another [sic]." (Dkt. 20-5 at 200-201, 203) Both Yanes and Mkrtichian declared they did not remember if "[they] saw the pictures that Jill McNeal took of Lucas Reynolds at Mila's school. If [they] did not use the pictures, then [they] did not consider them helpful." (Dkt. 20-5 at 200-201)

Respondent next argues that McNeal presents an unsubstantiated claim. (Ans. 22) McNeal disagrees. McNeal presented evidence that a Thanksgiving party attendee, Reynolds, knew about the M.K. incident. (Dkt. 20-4 at 38-52) Respondent argues that no evidence supports

---

[1]Attorney Yanes signed his declaration on March 31, 2014 and Attorney Mkrtichian signed her declaration on April 1, 2014.

McNeal's conclusion that McNeal's separate acts of molestation were linked by "coconspirators against him," or that trial counsel rendered ineffective assistance. (Ans. 22)

McNeal never suggested that anyone conspired against him. McNeal proved circumstantially that the Pauwens would have known about the M.K. case because Reynolds knew both McNeal and the Pauwens. Because the Pauwens learned of the M.K. incident in 2011, the alleged disclosure arose two years later when I.P. had problems at school and in bathrooms.  At the motion for new trial, McNeal presented evidence that, in October 2011, Johann and Michaele changed I.P.'s school and I.P. began to pee in her pants. (2ACT114) (10RT 8196-8197, 8199; 11RT 8495, 8714 [bathroom problems].) McNeal presented evidence that between November 9 - 11, 2011, Johann and Michaele noticed behavioral changes in I.P.  (2ACT120, 123, 124) (11RT 8434, 8715) Trial counsel inexplicably never presented this evidence to the jury.

Respondent cites to the motion for new trial transcript because, at the evidentiary hearing, the Pauwens denied knowing about the M.K.

incident.[2] (See Ans. 22) Respondent overlooks that, during trial, the Pauwens remembered even trivial details; at the motion for new trial hearing, the Pauwens were evasive and hostile. Johannes could not recall when he disclosed the incident to the police.  He could not remember when I.P. attended Muddy Brook.  (10RT 8196) He could not remember if he wrote a letter that he signed and dated.  (10RT 8197) When asked when I.P. started going to Muddy Brook Elementary School, even though the letter said September 11, 2011, Johannes answered, "Honestly, I'm not sure.  I have to do the math.  I'm not trying to be difficult."[3]  (10RT 8198)

Michaele testified, "Since when the trial closed, I have done everything I can to forget most of these things. So for the two years that I came here for trials, I relived those memories again and again. And did my best to remember everything with accuracy; but at this point, I don't know what I can and can't remember so –" (11RT 8713; 11RT 8714

---

[2]Before the Pauwens testified at the motion for new trial hearing, the prosecutor and the investigating detective met with the Pauwens and briefed and prepared them. (11RT 8445)

[3]During the motion for new trial hearing, Johannes testified I.P. saw his penis daily and that he would walk around naked.  (11RT 8478)

[Michaele cannot remember if I.P. had bathroom problems].)

Trial counsel rendered ineffective assistance by failing to investigate whether anyone at the Thanksgiving party knew about the M.K. incident.  The Pauwens' knowledge that McNeal had been previously accused of a similar offense would have compromised the integrity of the prosecution's case and created a reasonable possibility of a favorable verdict.  Trial counsel rendered ineffective assistance by failing to investigate why the Pauwens knew about the M.K. case.[4] (3RT 2731-2733) During McNeal's second trial, trial counsel presented a minimal defense. He presented McNeal's wife, McNeal's sister-in-law, and character witnesses. He presented some witnesses to the M.K. incident. He presented no experts at all.

A reasonable probability exists, that but for trial counsel's deficient performance, the outcome of the trial would have been different.  *Strickland* v. *Washington*, 466 U.S. at  687.

---

[4]At the motion for new trial hearing, Monee testified Michaele told Jacquire about the M.K. incident and Jacquire told Monee about the M.K. incident. (10RT 8119, 8121-8122, 8145 - 8146, 8153) Monee testified Michaele called her in January 2011 and told her about the M.K. incident.  (10RT 8148, 8158)

### III. TRIAL COUNSEL RENDERED INEFFECTIVE ASSISTANCE BY FAILING TO INVESTIGATE AND TO PRESENT A MEMORY EXPERT

Respondent again improperly relies on comments the trial court made at the motion for new trial hearing. (See, Ans. 23-25) Respondent cites portions of the CCA's opinion where the CCA unreasonably relies on the trial court's ruling at the motion for new trial. (Ans. 25)

Respondent cites no authority for the notion that a reviewing court should consider, or even rely, on the trial court's decision on a motion for new trial; the law entitles McNeal to an independent review of his case. *People v. Ault,* 33 Cal.4th at 1261 (When the defendant reasserts on appeal the claims previously raised in an unsuccessful new trial motion, the appellate court must independently review the record to determine if prejudicial trial error occurred.)

Respondent argues McNeal did not need to present a memory expert[5] because the jury did not "need an expert to evaluate commonly

---

[5] Respondent again erroneously relies on the trial court's belief that trial counsel did not render ineffective assistance by failing to call a memory expert. (Ans. 26) California law required the appellate court to render an opinion based on its independent evaluation of the evidence. *People v. Ault,* 33 Cal.4th at 1261.

13

understood issues affecting the reliability of testimony."   (Ans. 26)

Courts have consistently held trial courts committed reversible error in excluding expert testimony. E.g., *Brown v. Colm,* 11 Cal.3d 639, 647 (1974)(error to exclude a physician expert witness); *People ex rel. Dept. Pub. Wks. v. Douglas,* 15 Cal.App.3d 814, 820-822 (1971) (error to exclude expert opinion re value of land); *Varas v. Barco Mfg. Co.,* 205 Cal.App.2d 246, 259-261 (1962) (chemical engineer expert); *Reynolds v. Natural Gas Equipment, Inc.,* 184 Cal.App.2d 724, 739-740 (1960) (expert re standard of care); *Burch v. Valley Motor Lines, Inc.*, 78 Cal.App.2d 834, 840-844 (1947) (mechanical engineer); *People v. Stoll,* 49 Cal. 3d 1136, 1140 (1989) (Error to exclude psychologist's expert opinion testimony that defendant displays no signs of "deviance" or "abnormality."); *People v. McDonald,* 37 Cal.3d 351, 377 (1984), fn. omitted. (Error to exclude eyewitness identification expert.)

Respondent argues that trial counsel's cross-examination and closing argument adequately substituted for Dr. Loftus' expert opinion. (Ans. 27-28) McNeal disagrees.  In *Forensic v. Birkett,* 501 F.3d 469, 480-482 (6th Cir. 2007), the Sixth Circuit held that "other means" of attacking eyewitness identifications do not effectively substitute for

14

expert testimony on their inherent unreliability. Similarly, in *United States v. Smithers,* 212 F.3d 306 (6th Cir. 2000), the Sixth Circuit held that "the typical methods of "challeng[ing] inconsistencies" in the eyewitnesses' testimony "were not an effective substitute" for expert testimony.

Respondent next argues trial counsel made a reasonable tactical choice to forgo a memory expert. (Ans. 28) McNeal disagrees. Trial counsel never investigated how a memory expert would have helped McNeal's defense. McNeal's trial counsel failed to even consult with a memory expert about either the M.K. or the I.P. incidents. (Dkt. 20-5 at 201 203) Trial counsel failed in his obligation to ". . .  make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland v. Washington,* 466 U.S. 668, 691  (1984); *Kimmelman v. Morrison,* 477 U.S. 365, 384 (1986); *Hinton v. Alabama*, __ U.S. __ 134 S. Ct. 1081, 1088 (2014); *Wiggins v. Smith*,  539 U.S. 510, 525 (2003).

Dr.  Geoffrey Loftus, a memory expert, would have debunked the notion that the Pauwens could independently recall details from a Thanksgiving party that occurred two years earlier. (2ACT 240 ) Dr.

15

Loftus would have explained to the jury how information "learned under optimal circumstances decays away after about a year and (b) information learned under non-optimal circumstances (e.g., lacking attention) decays faster . . .  " (2ACT 151) Dr.  Loftus would have also explained the increased suggestibility of young children.  The Pauwens interviewed I.P. about four times.  (2ACT 128 [11/5/11], [11/5/11] 139, [11/10/11] 143, [11/11/11 150].)

Dr.  Loftus would have explained the consequences of suggestive post-event information on memory and witness confidence. (2ACT 245) Dr. Loftus would have explained how I.P.'s reports of abuse became more and more detailed over time as her parents spoke to her. (2ACT 245-246) Significantly, Dr.  Loftus would have testified that ". . . . *following repeated suggestive post-event information, people are capable of forming memories of entire, fictional, sometimes upsetting childhood events.* [Citations omitted] " (2ACT 246)  (Italics added.)

The case rested on a five-year-old's  statement that two years earlier, when she was three years old, a man asked her to suck on his penis.  The first trial ended in a mistrial. The outcome of the trial would have been different if trial counsel presented a competent memory

16

expert. An issue existed whether I.P. and/or Michaele remembered the event. An issue also existed whether any incident happened and who perpetrated the incident. If trial counsel presented a competent memory expert, McNeal would have been found innocent. Trial counsel's failure to call a memory expert deprived McNeal of the effective assistance of counsel.  See also, *Strickland v. Washington,* 466 U.S. at 687.

## IV.   TRIAL COUNSEL RENDERED INEFFECTIVE ASSISTANCE BY FAILING TO INVESTIGATE AND TO PRESENT AN EXPERT TO EXPLAIN HOW I.P.'S PARENTS TAINTED HER RECOLLECTIONS

On November 26, 2009, after three -year-old I.P.'s initial disclosure, her parents interrogated her.  According to Michaele, while she and I.P. were naked in a bathtub, I.P. demonstrated what happened using a thermos prop. Two years later, Michaele and Johann interviewed I.P. twice on November 5, 2011, once on November 10, 2011, and once on November 11, 2011.[6] (2254HCExh. D).  Social worker, Roann Vecchia, interviewed I.P. on November 11, 2011, and on November 15, 2011. (2254HCExh. E)

---

[6]Neither trial counsel nor the prosecutor introduced the parents' recorded interviews into evidence.

17

An expert, like Dr. David Thompson, would have testified how I.P.'s multiple interviews tainted I.P.'s memory and statements. The repeated interviewing, negative stereotype induction, a tainted identification procedure, inappropriate interviewing techniques, source misattribution errors (source monitoring errors), and interviewer bias adversely impacted I.P.'s memory and her statements causing her to mistakenly implicate McNeal. (2254HCExhs. A, B)

Dr. Thompson would have explained how misattribution errors and source monitoring caused I.P. to mistakenly recall where she saw a penis. Because I.P.'s father frequently walked around the house undressed, and I.P. saw his penis daily, I.P. mistakenly recalled where she saw a penis. (2254HCExhs. A; B 16-at8-19)

Respondent argues the CCA reasonably rejected the claim. Respondent faults habeas counsel for failing to ask trial counsel why they had not called a taint expert at trial and argues the CCA could have rejected this claim "on this basis alone." (Ans. 30) McNeal disagrees.  Both trial counsel admitted, in their declarations, that they contacted "psychiatrists with expertise in evaluating child abuse claims" and that they discussed the use of experts with "Mr. Yanes, Peter

McNeal and Jill McNeal." (Dkt. 20-5 at 201, 203) But trial counsel never investigated whether to call a taint expert.

Respondent also argues that the CCA would have been justified in rejecting McNeal's claim based solely on his failure to include declarations from trial counsel. (Ans. at 30) Not so.  Even if McNeal did not include trial counsels' declarations, McNeal gave the CCA a fair opportunity to act on his claims.  "[F]or purposes of exhausting state remedies, a claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of the facts that entitle the petitioner to relief." *Gray v. Netherland,* 518 U.S. 152, 162-63, 116 S. Ct. 2074, 135 L. Ed. 2d 457 (1996); see *O'Sullivan v. Boerckel,* 526 U.S. 838, 842, 844, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999) (concluding that "the state prisoner must give the state courts an opportunity to act on his claims" and holding that "[s]ection 2254(c) requires only that state prisoners give state courts a fair opportunity to act on their claims.")

The federal claim is fairly presented if raised in the petition itself, an accompanying brief, or another similar document filed with that court. See *Baldwin v. Reese,* 541 U.S. 27, 32, 124 S. Ct. 1347, 158 L. Ed.

2d 64 (2004); *Gentry v. Sinclair*, 705 F.3d 884, 897-98 (9th Cir. 2013)

*Womack v. Del Papa,* 497 F.3d 998, 1004 (9th Cir. 2007), a case cited by respondent, differs because Womack challenged trial counsel's failure to discuss defenses with him and the plea agreement specifically stated, that he discussed his defenses with his attorney.  Here, in contrast, not only did McNeal include declarations, the declarations show that trial counsel failed to even consider a taint expert. *Rice v. Cooper,* 148 F.3d 747 (7th Cir. 1998) another case respondent cites, differs because Rice argued that his lawyer rendered ineffective assistance by failing to request a hearing, not that Rice failed to include an affidavit. *Rice v. Cooper,* 148 F.3d 747, 750 (7th Cir. 1998)

Respondent infers that trial counsel made a tactical decision to use cross-examination in lieu of expert testimony.  (Ans. 30) McNeal disagrees.  Trial counsel never investigated how a taint expert would have helped McNeal's defense. McNeal's trial counsel failed to even consult with a memory expert about either the M.K. incident or the I.P. incident. (Dkt. 20-5 at 201 203) Trial counsel failed in his obligation to ". . . make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at

691; *Kimmelman v. Morrison,* 477 U.S. 365, 384;  *Hinton v. Alabama*, __ U.S. __ ; *Wiggins v. Smith*,  539 U.S. at 525.

Respondent argues no prejudice resulted because I.P.'s "initial statement to her parents identifying Petitioner was spontaneous, the possible taint that could have occurred afterwards from repeated interviewing, interviewer bias, and the like, is irrelevant. Moreover, I.P.'s first statement identifying Petitioner was consistent with her second statement identifying Petitioner at her aunt's house, and consistent with her trial testimony. Consequently, the California Court of Appeal did not misapply *Strickland* in rejecting this claim." (Ans. 31)

McNeal disagrees.  Cal. Evid. Code § 801 permits a party to introduce expert testimony that may assist the trier of fact. *In re Nourn,* 145 Cal. App. 4th 820,834 (2006). Only I.P.'s parents heard I.P.'s purported initial disclosure and, two years later, her purported second statement.  Dr. Thompson would have testified I.P.'s parents could not have remembered what happened at the Thanksgiving party. (See HB, Claim III)

Furthermore, I.P.'s parents tainted I.P.'s recollections, statements, and subsequent trial testimony, by repeatedly using inappropriate

interviewing techniques including leading questions, empathy, and reinforcement. Dr. Thompson, would have testified how I.P.'s mother made suggestive statements (e.g., in response to I.P.'s assertion that she didn't remember what she told her mother "about the man," her mother told her what the child "remembered.")(2254HCExh.B 10-11)

Trial counsel's failure to present a taint expert prejudiced McNeal. An issue also existed whether any incident happened. An issue existed about what I.P. did or did not tell her parents. An issue existed about who perpetrated the incident.   The outcome of the trial would have differed if trial counsel presented a competent taint expert to explain why and how I.P. may have believed she had been molested, who molested her and where someone molested her.

From voir dire to closing argument, the prosecution tried to dispel the notion that children could be coached.  During voir dire, the prosecutor vetted the prospective jurors on their beliefs that children could be coached.  (2ART411-417; 3RT556-557) During closing, the prosecutor argued, "There's no coaching by parents or law enforcement." (8RT4811)  The prosecutor asked jurors rhetorically, "Do they [the witnesses and children] look coached to you?  A three-year-old that

remembers something with that detail three years later and describes the same conduct under cross-examination?" (8RT4934)

The taint expert would have explained how I.P. had been coached, not only by her parents, but also by Vecchia. Dr. Thompson, would have testified how I.P.'s multiple interviews, negative stereotype induction, a tainted identification procedure, inappropriate interviewing techniques, source misattribution errors (source monitoring errors), and interviewer bias adversely impacted I.P.'s memory, statements and caused her to mistakenly implicate McNeal. (2254HCExhs.A,B)

In this case, where the prosecution relied solely on a three-year-old's alleged statements to her parents and an alleged disclosure two years later, trial counsel's failure to call a taint expert deprived McNeal of the effective assistance of trial counsel. *Strickland*, 466 U.S. at 687.

## V.   TRIAL COUNSEL RENDERED INEFFECTIVE ASSISTANCE BY FAILING TO INVESTIGATE AND TO PRESENT A TAINT EXPERT FOR ACCUSER M.K.

The prosecution relied heavily on a prior uncharged incident involving M.K. M.K. testified that, on December 11, 2009,[7] while McNeal volunteered to prepare for a festival at his children's school, McNeal enticed M.K. to follow him by offering her candy. After M.K. followed McNeal down a pathway toward some bushes, McNeal told her to close her eyes and open her mouth.  When she opened her eyes, she saw McNeal laying in a "weird" position with his pants down and penis exposed. McNeal said "Shhhh.  Shhhh.  It's a secret.  Remember" and gave her Skittles. (4RT3080-3081, 3088, 3107, 3116, 3345, 3307-3311,3639–3640 3652-3656,3692)

The prosecution used the uncharged M.K. offense at McNeal's trial to prove McNeal's disposition to molest children. Even though the prosecution had audio recordings of the police and M.K.'s parents interrogating M.K., trial counsel never investigated nor presented a forensic child interview expert to testify about the fundamental flaws in

---

[7]The M.K. incident happened a week *after* November 26, 2009 Thanksgiving party.

24

M.K.'s interrogation that negatively impacted her credibility.

*Strickland v. Washington,* 466 U.S. at 691.

Respondent characterizes McNeal's claim as "impermissibly conclusory" because McNeal never asked trial counsel why he never called a taint expert at trial.  McNeal disagrees.  Respondent again overlooks that both trial counsel, in declarations, stated that they consulted with a "psychiatrist." (2ACT288,290) Trial counsel rendered ineffective assistance by failing to thoroughly investigate the use of a taint expert. See, e.g., *In re Fields,* 51 Cal.3d 1063, 1069 (1990) (An informed  and rational decision  based on strategy and tactics can be made only after adequate investigation and preparation); *People v. Ledesma,* 43 Cal.3d 171,215 (1987).

Despite trial counsel's failure to even investigate how a taint expert would have helped him at trial, respondent argues that trial counsel made a tactical decision to forgo a taint expert.  (Ans. 32) Respondent argues that a taint expert would not have helped McNeal because M.K. made consistent disclosures.  (Ans. 32)

McNeal disagrees.  Dr. Thompson would have testified that ". . . a significant probability [exists] that the inappropriate questioning

25

techniques used with [M.K.] during her initial questioning by the police and her parents have tainted [her] recollections and influenced the statements that she subsequently made." *Id.* at 45.

Dr. Thompson, would have testified how M.K.'s multiple interviews tainted M.K.'s memory and subsequent testimony. Dr. Thompson would have testified how [M.K.'s] repeated interviews by the police with M.K.'s parents present, exposed M.K. to "leading and suggestive questions . . . [and] raise grave concerns about the reliability of [M.K.'s] statements and subsequent memories of the alleged encounter" with McNeal. (2254HCExh. G at 39)

The M.K. incident consumed a large part of McNeal's trial, namely 146 total pages of transcript.   The charged offense consumed 266 pages. (3RT 2451 - 2829; 4RT 3003-3047, 3049 - 3074 )

Defense counsel inexplicably never introduced M.K.'s audio recorded interviews nor presented a forensic child interview expert to explain how the interviews tainted M.K.'s recollections of any encounter with McNeal.  (See  2254HCExh. G)  Dr. Thompson, would have explained how M.K.'s parents and the police tainted and corrupted M.K.'s memory and statements. Trial counsel's failure to present a taint

26

expert and the tape recordings deprived McNeal of the effective

assistance of trial counsel.  *Strickland*, 466 U.S. at 687.

## VI.   TRIAL COUNSEL RENDERED INEFFECTIVE ASSISTANCE BY FAILING TO PRESENT EVIDENCE 1) ABOUT THE CHARTER SCHOOL; 2)ABOUT THE THANKSGIVING DINNER PIES; AND 3) BY ARGUING MCNEAL'S GUILT

### A.   Introduction

Respondent argues the CCA reasonably rejected McNeal's

ineffective assistance of counsel claims.  (Ans. 33) McNeal disagrees.

The CCA, instead of exercising its independent judgment,

impermissibly relied on the trial court's findings that the height of the

bushes, the evidence showing no cupcakes were at the Thanksgiving

party, and trial counsel's statement urging the jurors to vote "guilty"

made no difference. (LD 2 at 8-11, internal citations omitted.) *People v.*

*Ault*, 33 Cal.4th at 1261-62.

Respondent again challenges McNeal's claim as "impermissibly

conclusory." Respondent again argues that McNeal "never asked

counsel to explain their decisions, the California Court of Appeal could

have rejected the claim on this basis alone."  (Ans. 35) Again, McNeal

disagrees.  A habeas petitioner need not present the state court with

every piece of evidence supporting his federal claims. *Davis v. Silva*, 511

F.3d 1005, 1009 (9th Cir. 2008). A petitioner need allege "the facts

necessary to give application to the constitutional principle upon which"

he relies. *Id.*

### B.   Photographs of the Bushes

The bushes' height at M.K.'s school became an issue at trial

because Birgitta testified the bushes hid the walkway where the M.K.

incident occurred from public view.  (4RT 3092-3094) (Tr. Exhs.  36 - 41)

Respondent argues "extensive evidence" was presented about the height

of the bushes and the witnesses could have explained whether the

pictures accurately depicted the height of the bushes.  (Ans. 35) To

support his argument, respondent again inappropriately cites the trial

court's ruling at the motion for new trial. *People v. Ault*, 33 Cal.4th at

1261-62.

McNeal disagrees. The jury could not have considered the height

of the bushes without actually seeing the height of the bushes as it

existed during the alleged incident. The photographs depicted the

Charter school and the bushes at the time of the M.K. incident.  The

bushes were not as high as the prosecution claimed and that someone

else could have seen if McNeal exposed himself. Trial counsel rendered ineffective assistance by failing to present the photographs. *Strickland v. Washington*, 466 U.S. at 687.

### C.    The Dessert at the November 2009 Thanksgiving Party

Respondent argues that questioning about the desserts would have accomplished nothing and just wasted time.  (Ans. 36) Respondent again cites the CCA's finding.  Respondent again overlooks that the CCA inappropriately cited the trial court's ruling at the motion for new trial.  *People v. Ault*, 33 Cal.4th at 1261-62.

The prosecutor made an issue about the cupcakes.  The prosecutor argued McNeal gave I.P. a cupcake and that I.P. would have remembered whether she saw cupcakes at a party.  (8RT 4803, 4815) The prosecutor used the cupcake to prove that McNeal lured I.P. into the bathroom.  (8RT 4835, 4836, 4839, 4931). The prosecutor urged the jury to convict McNeal because McNeal "enticed I.P. with a cupcake and then put his penis in her mouth."  (8RT 4803) The prosecutor argued McNeal gave I.P. a cupcake from his pocket.   (8RT 4815) The prosecutor argued I.P. "had a lot of detail about the cupcakes. Who remembers cupcakes at a Thanksgiving party? A little kid. A three-

year-old. Little kids who like cupcakes." (8RT 4815)

The prosecutor challenged Jill's testimony that no cupcakes were at the party. The prosecutor argued, "There were no cupcakes at the party because Jill McNeal says so. You have to decide whether what she says about the party is reasonable or not. (8RT 4839) The prosecutor argued McNeal must have held the cupcake behind his back instead of his pocket. (8RT 4931)

Defense counsel overlooked several e-mails that would have corroborated Jill's testimony that no cupcakes were present at the Thanksgiving party. (2ACT 293) In the e-mails, Jill specifically says she will be bringing "fruit and [a] blueberry pie" or perhaps pineapples. (2ACT 294)

Defense counsel considered the dessert evidence important and argued inconsistencies about the cupcake. (8RT 4881) Trial counsel argued, "So Jill says there's no cupcake. The mom says Michaele Pauwen, she says there's a cupcake. Even though she's never said it before she says there's a cupcake. Why? Because she has to add on to [I.P.'s] story, right? Because she has to confirm her daughter's story. She has to have her daughter believed." (8RT 4882; see also 8RT 4883)

30

### D.   Defense Counsel Argued McNeal's Guilt

Defense counsel "mistakenly" urged the jury to convict McNeal. At the end of her closing, defense counsel argued, ". . . and after considering all of that *you will have no choice but to come back with the only reasonable verdict in this case which is the verdict of guilty."* (8RT 4923) (Italics added.)

Respondent argues that the "innocent and utterly insignificant lapse" made "inadvertent[ly]" was immediately corrected. (RB 30) Respondent again impermissibly adopts the trial court's statement that ". . . everybody got a big laugh out of it [defense counsel's statement] at the time.  Those jurors didn't say oh it was a Freudian slip.  She really believes he's guilty.  No.  They knew what she meant."  (RB 30)

Contrary to respondent's contention, trial counsel made a critical error at the most critical time. The prosecution charged McNeal with serious child molestation charges and McNeal faced life in prison. Jurors should not be getting a "big laugh" out of a defense attorney's closing argument. No one, not even the judge,  could know what jurors thought. The jurors laughed because they assumed trial counsel really believed McNeal was guilty and believed defense counsel made a

31

"Freudian slip," a subconscious reference to her belief in McNeal's guilt. *Strickland v. Washington,* 466 U.S. at 687.

## VII.  THE PROSECUTOR COMMITTED PREJUDICIAL MISCONDUCT DURING CROSS-EXAMINATION AND CLOSING

During cross-examination, the prosecutor impermissibly suggested to the jury that the school trimmed the bushes because of the M.K. incident.  The prosecutor did not know if the bushes had been cut or why anyone cut the bushes. The trial court sustained the defense objections, but the prosecutor achieved her goal because the jury heard the prosecutor's personal belief why she believed the bushes had been cut. (6RT 4301)

Respondent disagrees and claims the CCA properly found the prosecutor's "minor" comment did not affect the case's outcome.[8]  (Ans. 31)  McNeal disagrees.  Again the CCA improperly relied on the trial court's statements.  *People v. Ault*, 33 Cal.4th at 1261-62.  The CCA

_____

[8]Respondent argues the CCA reasonably found defense counsel forfeited the issues.  (Ans. 42) Not so. Any objection would have been futile because defense counsel made no contemporary objection, but asked for a mistrial; the trial court denied the mistrial motion. (8RT 4845.)

overlooked that,  "'Statements of supposed facts not in  evidence … are a highly prejudicial form of misconduct, and a frequent basis for reversal.'" *People v. Hill*, 17 Cal.4th 800, 828 (1998); *People v. Shazier*, 212 Cal. App. 4th 520, 530-531 (2012).

During closing argument, the prosecutor also committed misconduct by appealing to the jury's passions and prejudices when she urged the jury to consider I.P.'s and M.K.'s psychological damage.  (8RT 4841-4842) Respondent argues the prosecutor fairly argued that molestation of a three-year-old would cause devastating damage. (RB 33)

McNeal disagrees.  The prosecutor wanted to prejudicially inflame the jury against McNeal by invoking the child's present and future pain and suffering. See, *People v. Vance*, 188 Cal.App.4th 1182, 1192 (2010) (prosecutor violated the "Golden Rule" by inviting the jury to put itself in the victim's position and imagine what the victim experienced. *Vance* found such conduct "is a blatant appeal to the jury's natural sympathy for the victim.") *Id.* at 1188.

Respondent also argues the prosecutor properly argued that McNeal lured his victims and volunteered at the school to commit

crimes. (Ans. 46) McNeal disagrees. No evidence or any reasonable inference justified the prosecutor's argument.  The prosecutor's argument not only inflamed the jury but mislead the jury to believe McNeal committed other crimes.

Respondent also argues the prosecutor committed no misconduct by arguing that McNeal chose strangers because they were less likely to identify him. (Ans. 42) McNeal disagrees.   No evidence or any reasonable inference justified the prosecutor's argument.  The prosecutor's argument not only inflamed the jury but mislead the jury to believe McNeal committed other crimes.

Respondent also argues any error was harmless. (Ans. 47) McNeal disagrees.  Respondent overlooks the prosecutor represents "'a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case,  but that justice shall be done.'" *Berger v. United States,* 295 U.S. 78, 88 (1935). The prosecutor's improper comments inflamed the jury against McNeal.

Respondent further describes the evidence against McNeal as "compelling." (Ans. 48) Respondent mischaracterizes the evidence by

arguing that "both girls identified [McNeal] on the day the attacks occurred." (Ans. 48) Not so. In a case with no forensic corroboration no witnesses and tainted witnesses, the misconduct had a substantial and injurious effect or influence in determining the jury's verdict. *See Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993).

## VIII. THE COMBINATION OF ERRORS RENDERED MCNEAL'S TRIAL FUNDAMENTALLY UNFAIR

Respondent summarily concludes the CCA reasonably concluded that no cumulative error resulted. (Ans. 38) McNeal disagrees. The individual prejudicial errors mandated relief. "Although no single alleged error may warrant . . . relief, the cumulative effect of errors . . . deprive[d] . . . [McNeal] of the due process right to a fair trial." *Karis v. Calderon,* 283 F.3d 1117, 1132 (9th Cir. 2002); U.S. Const. amends. V, VI, XIV.

### IX. MCNEAL'S STATUTORILY MANDATED SENTENCE OF 15 YEARS-TO-LIFE VIOLATES THE EIGHTH AMENDMENT'S PROHIBITIONS AGAINST CRUEL AND UNUSUAL PUNISHMENT

Respondent apparently overlooked this claim. The jury convicted McNeal of violating Cal. Penal Code § 288.7.  Cal. Penal Code § 288.7 mandated a 15 years to life sentence. The trial court unconstitutionally sentenced McNeal to 15 years to life in state prison. (11RT 9331) The sentence violated McNeal's constitutional rights against cruel and unusual punishment.  U.S. Const. amend. VIII.

# CONCLUSION

WHEREFORE, McNeal prays:

1.  That this Court vacate the judgment of commitment entered against McNeal (No. BA391776) and that McNeal be released from his state prison commitment, or;

2.  That this Court command Warden Borders  to have McNeal and the authority for his commitment at any necessary court proceedings;

3.  That this Court hold an evidentiary hearing;  and

4.  That McNeal be granted such further relief as the Court deems just and proper.

DATED: January 23, 2019

Respectfully submitted,
FAY ARFA, A LAW CORPORATION

/s Fay Arfa

_____
Fay Arfa, Attorney for Appellant

37